UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT KALANI,

Plaintiff,

v.

THE AVENUE GRILL, INC., et al.,

Defendants.

No. 2:15-cv-2114 JAM AC

FINDINGS AND RECOMMENDATIONS

This case alleges that the interior space of The Avenue Grill did not meet the accessibility requirements of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., and comparable state law. Plaintiff moves for a default judgment against defendant Zarpad, LLC ("defendant" or "Zarpad"). For the reasons set forth below, the undersigned recommends that the motion be denied.

I. THE COMPLAINT

Plaintiff Robert Kalani is disabled. Complaint (ECF No. 1) ¶ 8. Zarpad (together with settled defendant The Avenue Grill, Inc.), owns, operates and/or leases The Avenue Grill in Lodi, CA. Complaint ¶¶ 1, 7. The Avenue Grill ("the facility") is a place of public accommodation. Id. ¶ 9. Plaintiff visited the facility on or about June 17, 2015. Id. ¶ 10. During that visit, plaintiff personally encountered barriers which, he alleges, denied him full and equal access.

////

## II. PROCEDURAL BACKGROUND

On March 3, 2016, plaintiff filed his proof of service of the summons and complaint on Zarpad. ECF No. 20. The Clerk of the Court entered a default against Zarpad on May 5, 2016. ECF No. 22. Plaintiff now moves for default judgment against Zarpad (having settled with Avenue Grill), on his claim under the ADA, 42 U.S.C. §§ 12182, 12183, and the Unruh Act, Cal. Civ. Code §§ 51(f), 52(a). The motion seeks damages and attorney's fees only.

## III. LEGAL STANDARDS

### A. Motion for Default Judgment

It is within the sound discretion of the district court to grant or deny an application for default judgment. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The complaint's well-pleaded factual allegations "are taken as admitted on a default judgment." Benny v. Pipes, 799 F.2d 489, 495 (9th Cir. 1986). Those well-pleaded factual allegations must be sufficient to establish plaintiff's entitlement to a judgment under the applicable law. See Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388 (9th Cir. 1988) (reversing default judgment on Racketeer Influenced and Corrupt Organizations Act ("RICO") claim where "the complaint fails properly to allege a claim for violation" of RICO); Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) ("claims which are legally insufficient, are not established by default").

The decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe, 616 F.2d at 1092. In making this determination, the court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### B. Title III of the ADA

"Title III of the ADA prohibits discrimination in public accommodations . . . ." Kohler v.

Bed Bath & Beyond of California, LLC, 780 F.3d 1260, 1263 (9th Cir. 2015). The elements of a Title III claim are: (1) plaintiff is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was discriminated against by the defendant because of plaintiff's disability. 42 U.S.C. § 12182(a); Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc., 603 F.3d 666, 670 (9th Cir. 2010).

Discrimination, in the ADA context, includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Where plaintiff alleges that the discrimination arose from defendants' failure to make modifications to existing policies, the complaint must additionally allege that defendants failed "to make a requested reasonable modification that was. . . necessary to accommodate the plaintiff's disability." Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1082 (9th Cir. 2004).

Facilities that are designed and built for first occupancy after January 26, 1993, are considered "new construction." 28 C.F.R. § 36.401(a)(1). For such facilities, discrimination "includes a failure to design and construct" the facility so as to make it "readily accessible to and usable by individuals with disabilities." Id.; Strong v. Valdez Fine Foods, 724 F.3d 1042, 1047 (9th Cir. 2013). For facilities that are altered after January 26, 1992, discrimination includes a failure "to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. § 36.402(a)(1).

The complaint in this case alleges four types of ADA discrimination. First, defendants failed to remove architectural barriers in an existing facility, where such removal was readily achievable, in violation of 42 U.S.C. § 12182(b)(2)(A)(iv). Complaint ¶¶ 19-22. Second, when defendants designed and constructed the facility, sometime after January 26, 1993, they failed to design and build it so as to be accessible, in violation of 42 U.S.C. § 12183(a)(1). Id. ¶¶ 213-25. Third, when defendants altered the facility, sometime after January 26, 1992, they failed to make the alterations accessible, in violation of 42 U.S.C. § 12183(a)(2). Id. ¶¶ 26-28. Fourth,

defendants failed to make reasonable modifications to their procedures and practices so as to make the facility accessible, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

C. The Unruh Act, Cal. Civ. Code §§ 51(f), 52(a)

Under California's Unruh Act, "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990. . . shall also constitute a violation of this section." Cal. Civ. Code § 51(f). Plaintiff seeks default judgment under the Unruh Act based solely upon defendant's alleged violation of the ADA. See ECF No. 24-1 at 7-8. Section 52(a) provides for statutory damages of no less than $4,000 for each violation, and attorney's fees. Id.

## IV. ANALYSIS – EITEL FACTORS

A. Prejudice to the Plaintiff

The first Eitel factor considers whether plaintiff would suffer prejudice if default is not entered. See PepsiCo, Inc. v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This factor is normally satisfied where, as here, defendant has been properly served with the complaint, but has entirely failed to respond to it.[1] If plaintiff's application for default judgment were denied outright (that is, without leave to re-submit it), the case would not get before the court on its merits, and plaintiff would be denied a judicial determination on whether it is entitled to recourse on its claim. See Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("prejudice" exists where the plaintiff has no "recourse for recovery" other than default judgment). Therefore, plaintiff would be prejudiced if the Court were to deny its application for default judgment without allowing the application to be re-submitted, and accordingly this factor weighs in favor of default judgment.

B. The Merits and Sufficiency of the Complaint

Given the close relationship between the merits of plaintiff's substantive claims and the

[1] This factor is more fully in play where the defendant has appeared and litigated the case, but a default judgment is sought based upon an untimely response to the complaint, as in Eitel itself, or where default judgment is sought as a sanction. See Eitel, 782 F.2d at 1471-72 (reciting seven factors to be considered after defendant late-filed an answer to the complaint); Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) (reciting five factors for Rule 37 sanction of striking answer and entering default, including the court's need to manage its docket), cert. denied, 498 U.S. 1109 (1991); Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990) ("[o]ur own court has fashioned a set of factors for the district court to apply in considering whether a dismissal or default is appropriate as a Rule 37 sanction").

sufficiency of the complaint, these factors can be discussed jointly. Effectively, factors two and three amount to a requirement that the allegations in the complaint be sufficient to state a claim that supports the relief sought. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) (in considering default judgment, "[t]he issue. . . is whether the allegations in the complaint are sufficient to state a claim").

1. Title III of the ADA

(a) Plaintiff is disabled.

Plaintiff sufficiently alleges that he is "disabled" as defined by the ADA, in that he "is substantially limited in his ability to walk, and must use a wheelchair for mobility" Complaint ¶ 8; see 42 U.S.C. § 12102(1)(A), (2)(A) (defining "disability" to include a "physical … impairment" that "substantially limits" the activity of "walking"); cf. Molski v. M.J. Cable, Inc., 481 F.3d 724, 732 (9th Cir. 2007) ("[i] t is clear that Molski, who is paraplegic, falls within that term").

(b) Defendant is a private entity that owns or operates a public accommodation.

Plaintiff sufficiently alleges that the facility is a public accommodation owned or operated by Zarpad and a settling defendant. Complaint ¶¶ 7, 9.

(c) Architectural barriers

Plaintiff sufficiently alleges that the facility was built for first occupancy after January 26, 1993, and that its interior spaces were altered after January 26, 1992.[2] In that case, the facility must be made accessible in accordance with the Americans with Disabilities Act Accessibilities Guidelines ("ADAAG"). See Chapman, 631 F.3d 939, 945 (9th Cir. 2011) (en banc) ("newly constructed facilities" must be "readily accessible," as defined by the ADAAG); 28 C.F.R. Part 36, App. C ("[t]his title prohibits discrimination on the basis of disability by public accommodations, [and] requires places of public accommodation and commercial facilities to be

---

[2] Actually, the complaint alleges "that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA." Complaint ¶ 23. The access requirements are not triggered unless the facility is built *for first occupancy* after January 26, 1993. The following paragraphs make it clear that the allegation is (implicitly) referring to the date of first occupancy, even though it does not include that phrase.

designed, constructed, and altered in compliance with the accessibility standards established by this part"); 36 C.F.R. Part 1191, App. B § 101.1 (the 2010 Standards "are to be applied during the design, construction, additions to, and alteration of … facilities"), 101.2 ("this document," which includes the 2010 Standards, "does not address existing facilities unless altered at the discretion of a covered entity").

However, plaintiff fails to allege sufficiently that any architectural barriers existed. Plaintiff has offered legal conclusions that assert, in effect, that defendant has not complied with the law, rather than alleging *facts* which show that defendant has not complied with the law.

(i) Accessible seating

The complaint alleges that "Plaintiff could not find any accessible seating spaces on the interior of the Facility and was forced to sit in the outdoor patio dining area instead." Complaint ¶ 10(a). The allegation that the indoor seating was not "accessible" is a legal conclusion, it is not a fact. It is only the well-pled *factual* allegations that are taken as true and that support the motion for default judgment. See Benny, 799 F.2d at 495 (the complaint's well-pleaded factual allegations "are taken as admitted on a default judgment"); Alan Neuman Productions, 862 F.2d at 1392 (those well-pleaded factual allegations must be sufficient to establish plaintiff's entitlement to a judgment under the applicable law).

Plaintiff offers no *facts* showing that the indoor seating was not accessible. He does not, for example, allege that there were *no* seating spaces that met the floor space clearance requirement of 30 x 48 inches, or that the knee spaces for the purportedly accessible seating spaces were not at least 27 inches high, and so on.[3] Although plaintiff submits many pages of exhibits in the motion, those exhibits are all about attorney's fees. There is nothing in those exhibits to clarify how defendant has violated the law.

The requirement that plaintiff allege facts is critical. As the complaint is currently written, it gives the court and the defendant no idea of what defendant did wrong, or failed to do. Did

---

[3] See, e.g., 1991 Standards, reprinted at 28 C.F.R. Pt. 36, Appx. D., §§ 4.32.2 (clear floor space for people in wheelchairs must comply with Section 4.2.4, which requires a minimum space of 30 x 48 inches), 4.32.3 (knee spaces must be at least 27 inches high), 5.1 ("Where fixed tables … are provided, at least 5 percent, but not less than one, of the fixed tables … shall be accessible").

defendant fail to provide the proper *number* of accessible seating spaces, even though the ones that are provided are fully compliant with the ADA? Did defendant provide the correct number, but did one or more of them fail to meet the knee height or floor clearance requirements?

For example, plaintiff may have entered the restaurant and found that the accessible seating space did not have enough room for his knees. However, that fact does not allege a violation of the law unless the space's knee height clearance was less than 27 inches. Plaintiff's purely subjective experience that he could not fit in the space, simply does not state a claim under the ADA. Cf. Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1048 (9th Cir. 2008) (on summary judgment, testimony "[t]hat Doran scraped his knuckles, unsupported by any measurements, is insufficient to demonstrate that 7-Eleven's aisles do not comply with the thirty-six-inch clearance that the Accessibility Guidelines mandate"). Similarly, if plaintiff arrived at the restaurant and needed two or three accessible spaces to accommodate his companions, but he was forced outside because there was only one accessible space available inside, that also does not necessarily state a claim under the ADA. It would only state a claim if the restaurant were of such a size that it was required to have the two or three accessible spaces available. Once again, plaintiff's subjective experience – there were not enough accessible spaces inside – is not enough to state an ADA claim. The only way for the court – and defendant – to know whether plaintiff has stated a claim is for him to allege the *facts* that make out a claim.

As it stands, the court has no idea which of the above scenarios, if any, is what plaintiff actually encountered. The court therefore cannot determine whether defendant violated the ADA or not. Plaintiff's current allegations may well be good enough to have supported the filing of the complaint under Rule 11, and efforts toward settlement. But for a default judgment, plaintiff must allege the operative facts, not legal conclusions.

(ii) Remaining allegations

Plaintiff's other allegations of architectural barriers are similarly vague and conclusory. The complaint alleges that a door had "an *excessively sloped* ramp," that a route "lacked *proper* wheelchair clearances," that the restroom "lacked *sufficient* maneuvering, turning and transfer

////

clearances," that a grab bar was "*improperly* configured and positioned," and that the plumbing "was not *properly* insulated." Complaint ¶ 10 (emphases added).[4]

These vague allegations also do not state claims under the ADA for the same reasons that the "seating" allegations fail. Each of them is a legal conclusion not supported by any underlying facts. For example, a factual allegation that that the ramp leading to the door had a slope exceeding "1:12,"[5] would allow the court to infer that the ramp did not comply with 1991 Standards § 4.8.2. Similarly, a factual allegation that the route to the restroom route was narrower than 36 inches would enable the court to infer the rout did not comply with 1991 Standards § 4.3.3. The same is true for the remainder of plaintiff's allegations.

This is not a requirement that plaintiff engage in *excessive* fact pleading. It is only a requirement that there be sufficient facts to show that defendant is in violation of the law. The requirements of the ADA are not vague; they do not simply require that plaintiff be able to fit comfortably into an accessible seat spot, or that he have enough room to maneuver. Rather, it specifies specific standards that defendant must meet. Plaintiff has not alleged that any specific standards were violated in any particular way. Accordingly, the allegations are insufficient to support relief.

(d) <u>Plaintiff declines invitation to amend</u>

At the hearing on this matter, plaintiff was invited to withdraw his motion and amend his complaint so that it properly alleged facts that could support a default judgment, or to file a supplemental brief explaining why his complaint is sufficient as pled. Plaintiff filed a supplemental brief and stood on his complaint as written. <u>See</u> ECF No. 26.

Plaintiff cites <u>Strong v. Valdez Fine Foods</u>, 724 F.3d 1042 (9th Cir. 2013) for the proposition that "the facts" he pled are sufficient to warrant a default judgment, and that "a disabled Plaintiff cannot be expected to travel with a tape measure or level to verify that the

---

[4] The complaint also alleges that a trash can obstructed the "required knee and toe clearances." Complaint ¶ 10(f). The trash can does not appear to be an actionable architectural barrier here, as there is no allegation that the obstruction persisted beyond a reasonable period of time, or was anything other than a "temporary or isolated interruption[] in … access." <u>See</u> <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 779 F.3d 1001, 1010 (9th Cir. 2015) (internal quotation marks omitted).

[5] That is, for every 1 inch of vertical distance there are 12 inches of horizontal distance.

conditions he encounters violate the ADA." ECF No. 26 at 3-4. Strong is powerful authority for the rights of the disabled; it refutes any claim that the ADA requires slide-rule accuracy or expert opinions to establish a violation of the ADA. However, Strong does not sanction the type of "legal conclusions as fact" allegations that plaintiff engages in here.

In Strong, plaintiff submitted a declaration stating, among other things, that the disabled parking spaces at defendant's establishment had slopes "exceeding 2.0%," that the access aisles next to those spaces had "slopes exceeding 2.0%," and that there were "sidewalk slopes exceeding 2.0%." 724 F.3d at 1044. On summary judgment, the district court "refused to consider Strong's evidence because it found that he didn't have personal knowledge." Id. at 1045. The Ninth Circuit reversed, because plaintiff was not required to take precise measurements, since "[i]t's commonly understood that lay witnesses may estimate size, weight, distance, speed and time even when those quantities could be measured precisely." Id. at 1046. Accordingly, it was good enough for Strong to give the *factual* estimate of a 2% slope. Here, plaintiff did not allege any factual estimates, or any factual allegations of any kind. Instead, plaintiff here has offered only legal conclusions. Strong does not hold that a plaintiff may offer legal conclusions in the place of factual assertions.

Plaintiff is correct that he is not required to bring a ruler and slide-rule, or an expert, with him into every establishment he visits, or into any of them. He is entitled to allege a *factual estimate* that will enable the court to infer that defendant's establishment does not comply with the ADA. Here, plaintiff asks the court to infer specific violations from allegations that say, in effect, "defendant broke the law." This is not sanctioned by Strong.

Plaintiff also argues that other plaintiffs have gotten away with this type of pleading in other cases. ECF No. 26 at 6. Those cases are not before the court. Moreover, this court is bound to make its determination based upon the complaint before it, and the governing law. In addition, the court notes that plaintiff's string cite – apparently intended to show overwhelming support for his pleading style – is somewhat misleading, because a majority of the five cases plaintiff cites, rely upon *factual* allegations explicitly in the text, or upon photographs incorporated into the complaint that provide visual, factual, support for the text allegations. See

Escobedo v. SJZ Shields, LLC, 1:15-cv-0765 GEB SAB, ECF No. 1 (E.D. Cal. May 19, 2015) (complaint relies upon factual allegations); Johnson v. Purser, No. 2:09-cv-3098 JAM DAD, ECF No. 9 (E.D. Cal. June 3, 2011) (first amended complaint supports text allegations with a photograph of the allegedly non-compliant van-accessible disabled parking space); Johnson v. Sandhu, No. 2:10-cv-2718 JAM JFM, ECF No. 1 (E.D. Cal. October 6, 2010) (complaint supports text allegations with photographs of allegedly non-compliant entrance, disabled parking space, and restroom entrance).

2. California's Unruh Civil Rights Act

Plaintiff alleges a violation of the Unruh Act solely on the grounds that "[a] violation of the ADA (which Plaintiff has established) constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f)." ECF No. 24-1. Since plaintiff has not established a violation of the ADA, he has not established a violation of the Unruh Act.

C. Sum of Money Involved

Under this Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176-77 (C.D. Cal. 2002). Plaintiff's complaint seeks a grand total of $4,000 plus attorney's fees of $10,557.35. The undersigned does not know defendant's financial condition, and therefore cannot say for certain is a significant amount of money to defendant. Accordingly, this factor neither weights in favor of, or against, the entry of a default judgment. However, the court notes that defendant had the opportunity to come defend against the lawsuit, or try to settle, if in fact this is a significant amount of money. There is no evidence defendant did anything after being served with the summons and complaint.

D. Disputed Material Facts

This Eitel factor "considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." Pepsico, 238 F. Supp. 2d at 1177. Here, there are many material facts that could be in dispute. As discussed above, the operative facts showing that defendant is in

////

violation of the ADA have not been properly alleged. This weighs strongly against the entry of a default judgment.

E. Excusable Neglect

This is another factor that is only fully in play if the requested default is because of an untimely pleading or is requested as a sanction. Here, defendant has made no appearance at all, so there is no way to tell if it failed to appear because of excusable neglect. This factor does not weigh in favor of, or against, default judgment.

F. Policy Favoring Merits Determinations

This factor always weighs against default judgment, since a default judgment would preclude a judgment on the merits. This factor seems to be fully in play when defendants have at least responded to the lawsuit, and the question is whether a default judgment should be entered because of untimely pleading, or as a sanction. Here, where plaintiffs have not even stated a claim against defendant, plaintiff would enjoy an unfair bonus by receiving a default judgment. This factor weighs against the entry of a default judgment.

V. CONCLUSION

As discussed above, the complaint here fails to state a claim under the ADA and under the Unruh Act. That failure is fatal to plaintiff's motion for a default judgment. See Alan Neuman Products, 862 F.2d at 1392 (reversing default judgment where "the complaint fails properly to allege a claim").

For the reasons stated above, IT IS HEREBY RECOMMENDED that plaintiff's Motion for Default Judgment (ECF No. 24), be DENIED without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file

objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: September 27, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE